PEOPLE v CONYER

Docket No. 278812. Submitted November 5, 2008, at Lansing. Decided
November 25, 2008, at 9:00 a.m.

A Bay Circuit Court jury convicted Kevin J. L. Conyer of assault with
intent to do great bodily harm less than murder and possession of
a firearm during the commission of a felony. The defendant's
convictions arose from a shooting incident that took place during
a confrontation at a party. The defendant asserted that he fired
shots to defend a person who had been assaulted and was in
danger. The defendant's counsel requested a jury instruction that
the defendant had no duty to retreat before he engaged in defense
of himself or someone else, citing the Self-Defense Act (SDA), MCL
780.971 *et seq.* The court, Kenneth W. Schmidt, J., rejected the
request on the ground that the shootings occurred before the
effective date of the SDA. The court concluded that the SDA
consequently did not apply and gave jury instructions consistent
with the common-law rules regarding self-defense, including the
duty to retreat. The defendant appealed.

The Court of Appeals *held*:

MCL 780.972(1) allows an individual to use deadly force in
certain circumstances to prevent the imminent death of or immi-
nent great bodily harm to the individual or another individual.
The SDA did not take effect until October 1, 2006, however, and
the shootings took place on January 29, 2006. The SDA contains
no language indicating a legislative intent that it apply retroac-
tively, and MCL 780.973 and the enacting sections of the public law
that enacted the SDA signal a legislative intent that the SDA apply
prospectively only. Because the shooting incident occurred before
the SDA's effective date, the defendant's right to use deadly force
in self-defense or the defense of another was limited by the
common-law duty to retreat.

Affirmed

CRIMINAL LAW — SELF-DEFENSE — DEADLY FORCE — STATUTES — EFFECTIVE
DATES OF STATUTES.

The Self-Defense Act applies prospectively only to offenses commit-
ted on or after October 1, 2006 (MCL 780.971 *et seq.*).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kurt C. Asbury*, Prosecuting Attorney, and *Martha G. Mettee*, Assistant Prosecuting Attorney, for the people.

*Patrick K. Ehlmann* for the defendant.

Before: FITZGERALD, P.J., and BANDSTRA and O'CONNELL, JJ.

PER CURIAM. Defendant appeals as of right his jury convictions of assault with intent to do great bodily harm less than murder, MCL 750.84, and possession of a firearm during the commission of a felony, MCL 750.227b. Defendant was sentenced to serve consecutive prison terms of 30 to 120 months for the assault conviction and two years for the felony-firearm conviction. We affirm.

Defendant's convictions arose from a shooting incident that took place outside a home where a large party was in progress during the early morning hours of January 29, 2006. The victims of the shootings, Alfred Peterson and Matthew Blossey, were at the party, but had been asked to leave. As they left, one or both of them threatened to return with guns. Hearing these threats, Kevin Lijewski's roommate, Shawn Galan, called Lijewski for a ride from the party. Defendant accompanied Lijewski to retrieve Galan. Defendant and Lijewski arrived at the party, located Galan, and were returning to Lijewski's truck to leave when Peterson and Blossey arrived with two other people and in multiple vehicles. Defendant and Lijewski observed Blossey strike a guest with a bottle, so they walked back toward the house. Blossey then walked away, so defendant and Lijewski again started toward Lijewski's vehicle to leave. Before they reached the vehicle, however,

a group of people formed a semicircle around them. Peterson, who admittedly returned to the party intending to fight, struck Lijewski in the head, knocking him to the ground. After he fell, Lijewski saw Blossey running toward him while brandishing a pointy wooden stake. Lijewski fired warning shots into the ground. Defendant asserts that he, too, fired shots to defend Lijewski after Lijewski, who had been assaulted and was in danger, yelled for help. The shots struck Peterson and Blossey.[1]

Defense counsel requested that the trial court instruct the jury, consistently with the recently enacted Self-Defense Act (SDA), MCL 780.971 *et seq.*, that defendant did not have a duty to retreat before he engaged in defense of himself or of someone else under the circumstances presented in this case. The trial court rejected defense counsel's request on the ground that the shootings occurred before the effective date of the SDA and, thus, the SDA was inapplicable. Consequently, the trial court gave the jury instructions consistent with the common-law rules regarding self-defense, including the duty to retreat.

Defendant's sole argument on appeal is that the trial court erred by instructing the jury that defendant had a duty to retreat before using deadly force because the SDA applies retroactively to this case. We disagree.

Whether a statute applies retroactively presents a question of statutory construction, which this Court reviews de novo. *Frank W Lynch & Co v Flex Technolo-*

---

[1] Defendant was charged with assault with intent to do great bodily harm less than murder, felonious assault, MCL 750.82, and two counts of felony-firearm in connection with the shooting of Blossey. He was acquitted of those charges. Defendant's convictions arose from the shooting of Peterson. Defendant was also convicted of felonious assault and felony-firearm in connection with the shooting of Peterson, but those convictions were dismissed at sentencing on the basis of double jeopardy.

*gies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001). The intent of the Legislature governs the determination whether a statute is to be applied prospectively or retroactively. *Id.* A statute is presumed to operate prospectively "unless the Legislature has expressly or impliedly indicated its intention to give it retrospective effect." *People v Russo*, 439 Mich 584, 594; 487 NW2d 698 (1992). Stated differently, a statute is " 'presumed to operate prospectively unless [a] contrary intent is clearly manifested.' " *Lynch, supra* at 583, quoting *Franks v White Pine Copper Division*, 422 Mich 636, 671; 375 NW2d 715 (1985); see also *People v Doxey*, 263 Mich App 115, 121; 687 NW2d 360 (2004) (" '[A]mendments of statutes are generally presumed to operate prospectively unless the Legislature clearly manifests a contrary intent.' ") (citation omitted). However, an exception to this general rule is recognized if a statute is remedial or procedural in nature. *Russo, supra* at 594; *People v Link*, 225 Mich App 211, 214-215; 570 NW2d 297 (1997). A statute is remedial if it is designed to correct an existing oversight in the law or redress an existing grievance, or if it operates in furtherance of an existing remedy and neither creates nor destroys existing rights. *Saylor v Kingsley Area Emergency Ambulance Service*, 238 Mich App 592, 598; 607 NW2d 112 (1999); *Link, supra* at 214-215. A statute that affects or creates substantive rights is not remedial, and is not given retroactive effect, absent clear indication of legislative intent otherwise. *Lynch, supra* at 585.

Section 2(1) of the SDA provides, in part:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1).]

In addition, § 3 of the SDA provides: "Except as provided in section 2, this act does not modify the common law of this state in existence on October 1, 2006 regarding the duty to retreat before using deadly force or force other than deadly force." MCL 780.973. The shootings that gave rise to defendant's arrest took place on January 29, 2006; the SDA did not become effective until October 1, 2006. As acknowledged by § 3 of the SDA, the statute altered the common law of self-defense concerning the duty to retreat. Therefore, even if the SDA perhaps could be characterized as partly remedial, it nevertheless created a new substantive right, i.e., the right to stand one's ground and not retreat before using deadly force in certain circumstances in which a duty to retreat would have existed at common law.[2] Thus, it does not apply retroactively absent an indication that such was the intention of the Legislature in passing the statute. *Lynch, supra* at 585 ("[W]e have rejected the notion that a statute significantly affecting a party's substantive rights should be applied retroactively because it can also be characterized in a sense as 'remedial.' ").

---

[2] Generally, the use of deadly force in self-defense is justified if a person "honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin,* 434 Mich 482, 502; 456 NW2d 10 (1990). However, unless attacked inside one's own home, or subjected to a sudden, fierce, and violent attack, a person has a common-law duty to retreat, if possible, as far as safely possible. *People v Riddle,* 467 Mich 116, 118-121; 649 NW2d 30 (2002). Conversely, under § 2 of the SDA, there is no duty to retreat if the person has not committed or is not committing a crime and has a legal right to be where the person is at the time he or she uses deadly force. MCL 780.972(1). Section 2 of the SDA thus constitutes a substantive change to the right of self-defense.

We conclude that the SDA in general, and MCL 780.972 in particular, apply prospectively only. The SDA contains no language indicating that the Legislature intended the act to apply retroactively. Enacting § 1 of 2006 PA 309 states specifically that the SDA "takes effect October 1, 2006." This is an indication that the Legislature intended the provision to apply prospectively from that date. See *Lynch, supra* at 583-584. Additionally, enacting § 2 states that the SDA would not take effect unless other legislative bills, which became 2006 PA 310, 2006 PA 311, 2006 PA 312, 2006 PA 313, and 2006 PA 314, were also enacted into law.[3] This, too, signals a legislative intent that the act apply only prospectively. See *id.* Further, the legislation cited in enacting § 2 relates to the same subject matter and thus is read *in pari materia* with the SDA. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998); *Doxey, supra* at 121. None of this legislation suggests any intent that it be applied retroactively. Therefore, all indications are that the Legislature intended the SDA to apply only prospectively. *Doxey, supra* at 121.

Section 2 of the SDA, MCL 780.972, affects substantive rights and, as such, cannot be classified as a remedial statute. Therefore, because the Legislature manifested no intent that it apply retroactively, it applies only prospectively, to offenses committed on or after its effective date. Because the incident that formed the basis of defendant's convictions took place before the SDA's effective date, defendant's right to use deadly force in self-defense or defense of others was limited by a duty under the common law to retreat, and the jury instruction reflecting as much was appropriate.

We affirm.

---

[3] These acts were codified at MCL 780.961, MCL 780.951, MCL 600.2922c, MCL 768.21c, and MCL 600.2922b, respectively.