# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GERALD ANDREW KUPINSKI,

        Defendant-Appellant.

UNPUBLISHED
June 28, 2018

No. 328572
Macomb Circuit Court
LC No. 2015-000099-FC

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

MURPHY, P.J. (*concurring*).

I agree with the majority that reversal is necessary, but I would employ a different analysis. Accordingly, I respectfully concur.

## I. INTRODUCTION

The issue posed to us concerns the proper manner in which to instruct a jury with respect to self-defense and the crime of felon in possession of a firearm. Defendant challenges the following language in the trial court's instructions, "First, at the time he acted the defendant must not have been engaged in the commission of a crime." This language was read twice to the jury, once for the instruction on defense of oneself and again for the instruction on defense of others.[1] Defendant argues that this language necessarily undermined his claim of self-defense in regard to felon-in-possession, because he had stipulated to being a "felon" and his possession of the firearm before the shooting could be viewed as constituting the "commission of a crime," i.e., felon-in-possession, effectively and immediately short-circuiting the claim of self-defense before the jury moved on to the other elements. Defendant also contends that the general framework of the self-defense instructions, which spoke to justifying or excusing the *use of deadly force*, could have led the jury to believe that justifying or excusing the mere *possession* of a firearm was not encompassed by the instructions.

---

[1] The jury was also instructed on the duty to retreat under M Crim JI 7.16, which provides, in part, that retreat is not required if the defendant was not "engaged in the commission of a crime at the time the deadly force [was] used . . . ."

-1-

The prosecution argues that the trial court's instructions on self-defense relative to felon-in-possession were consistent with the law. The prosecution also contends that the evidence did not support a conclusion that defendant possessed the gun for purposes of self-defense. To the extent that the prosecution is maintaining that the evidence did not support instructions on self-defense in regard to the offense of felon-in-possession, the prosecution agreed to the instructions at issue, so that claim was waived. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

## II. SELF-DEFENSE UNDER THE COMMON LAW

In *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010), our Supreme Court held as follows:

> Having necessarily limited our analysis to the specific issue properly raised and preserved before the trial court, we conclude that the *traditional common law* affirmative defense of self-defense is generally available to a defendant charged with being a felon in possession if supported by sufficient evidence. We also conclude that self-defense was available under the facts of this case. Once a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt. [Emphasis added.]

The *DuPree* Court tackled the issue of self-defense in relation to felon-in-possession under the common law, and the Court explained the general nature of common-law self-defense, stating:

> At common law, the affirmative defense of self-defense justifies otherwise punishable criminal conduct, usually the killing of another person, if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself. Generally,
>
>> one who is not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary when he reasonably believes (a) that he is in immediate danger of unlawful bodily harm from his adversary and (b) that the use of such force is necessary to avoid this danger.
>
> A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions. [*Id.* at 707 (citations, quotation marks, and alteration brackets omitted).]

In *People v Riddle*, 467 Mich 116, 119, 126; 649 NW2d 30 (2002), the Michigan Supreme Court indicated that common-law self-defense may be raised where a defendant "is free from fault" and is "a nonaggressor." In *People v Reese*, 491 Mich 127, 144-145; 815 NW2d 85 (2012), our Supreme Court explained that self-defense is focused on the concept of "necessity."

-2-

In *People v Townes*, 391 Mich 578, 593; 218 NW2d 136 (1974), the Supreme Court, addressing common-law self-defense and quoting *State v Perigo*, 70 Iowa 657, 666; 28 NW 452 (1886), observed:

> It may be conceded that everything that was done by defendant in the transaction, up to the moment of the final attack by the deceased, was unlawful and wrongful; yet, if that assault was felonious and was of such a character as to clearly indicate an intention by the assailant to take defendant's life, or to inflict on him some enormous bodily injury, there is no valid ground for holding that he was precluded from the right to defend himself against it by the mere fact that he had been, or then was, engaged in the commission of a trespass upon the property of the deceased.

> The general doctrine undoubtedly is that one who has taken the life of an assailant, but who was himself in the wrong, cannot avail himself of the plea of self-defense. But the wrong which will preclude him from making that defense must relate to the assault in resistance of which the assailant was killed. If at the time the assault is made upon him, he is engaged in the commission of an act which is wrongful, but which is independent of the assault, he may lawfully defend himself against it, to the extent even of slaying the assailant, if it is felonious, unless, indeed, his act is of such a character as to justify the assault. The mere fact, then, that defendant was engaged in committing a trespass when deceased attacked him, does not necessarily constitute him a wrong-doer in the matter of the assault, or preclude him from making the defense of self-defense. [Citations, quotation marks, and ellipses omitted.]

As reflected in the Michigan Supreme Court precedent, the common law does not automatically deny a defendant a claim of self-defense in situations wherein the defendant is engaged in the commission of a crime when deadly force is exerted by the defendant. Rather, criminal activity by a defendant can only defeat a claim of self-defense if it entails the defendant acting as the aggressor, e.g., the defendant initiates a felonious assault, or if the criminal activity otherwise justifies a forceful response to which the defendant forcefully reacts. In other words, even if a defendant is engaged in the commission of a crime, self-defense can still be claimed so long as the crime is independent of the other person's assaultive behavior, freeing the defendant from fault. Thus, for example, a defendant who participates in an illegal drug transaction with another individual would not be precluded from raising a claim of self-defense if the other person initially attempts to fatally stab the defendant during the transaction and the defendant responds by killing the individual. In that scenario, defendant's engagement in an otherwise non-violent drug deal would be independent of the other person's decision and act to knife the defendant. As an additional example, a woman engaged in an act of prostitution can claim self-defense if, during the act, she kills the "john" after he first violently assaults her, given that the woman's involvement in the commission of a crime, prostitution, would not justify a physically assaultive response. Accordingly, the common law does not mechanically require general non-engagement in crime as a prerequisite to pursuing self-defense. Consistently with this proposition, nowhere in the *DuPree* opinion did the Supreme Court state that a defendant facing a charge of felon-in-possession is required to show that he or she was not engaged in the commission of a crime when exercising deadly force in order to claim self-defense. Of course, if

-3-

a defendant had committed a crime that amounted to him or her being the initial aggressor, self-defense would not be available. See M Crim JI 7.18.

### III. SELF-DEFENSE PURSUANT TO STATUTE

Pursuant to 2006 PA 309, the Legislature enacted Michigan's Self-Defense Act (SDA), MCL 780.971 *et seq.*, which was made effective October 1, 2006.[2] MCL 780.972 provides, in pertinent part:

> (1) *An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force* may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
>
> (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual. [Emphasis added.]

Except as provided in MCL 780.972, the SDA did "not modify the common law of this state in existence on October 1, 2006 regarding the duty to retreat before using deadly force or force other than deadly force." MCL 780.973. And the SDA did "not diminish an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state in existence on October 1, 2006." MCL 780.974.[3] The SDA "altered the common law of self-defense concerning the duty to retreat."

---

[2] Although the Supreme Court's decision in *Dupree* was issued in 2010, the altercation at issue occurred in September 2005; therefore, the Court did not look to the SDA for resolution. *Dupree*, 486 Mich at 708.

[3] MCL 780.961 provides:

> (1) An individual who uses deadly force or force other than deadly force in compliance with section 2 of the self-defense act and who has not or is not engaged in the commission of a crime at the time he or she uses that deadly force or force other than deadly force commits no crime in using that deadly force or force other than deadly force.
>
> (2) If a prosecutor believes that an individual used deadly force or force other than deadly force that is unjustified under section 2 of the self-defense act, the prosecutor may charge the individual with a crime arising from that use of deadly force or force other than deadly force and shall present evidence to the judge or magistrate at the time of warrant issuance, at the time of any preliminary examination, and at the time of any trial establishing that the individual's actions were not justified under section 2 of the self-defense act.

*People v Conyer*, 281 Mich App 526, 530; 762 NW2d 198 (2008). The SDA "created a new substantive right, i.e., the right to stand one's ground and not retreat before using deadly force in certain circumstances in which a duty to retreat would have existed at common law." *Id.* The *Conyer* panel compared the duty to retreat under the common law to the duty to retreat under the SDA, explaining:

> [U]nless attacked inside one's own home, or subjected to a sudden, fierce, and violent attack, a person has a common-law duty to retreat, if possible, as far as safely possible. *People v Riddle*, 467 Mich 116, 118-121; 649 NW2d 30 (2002). Conversely, under § 2 of the SDA, there is no duty to retreat if the person has not committed or is not committing a crime and has a legal right to be where the person is at the time he or she uses deadly force. MCL 780.972(1). Section 2 of the SDA thus constitutes a substantive change to the right of self-defense. [*Conyer*, 281 Mich App at 530 n 2.]

IV. ANALYSIS

As reflected above, self-defense under the common law and self-defense under the SDA take a parallel track with similar requirements, except with respect to the duty to retreat, with the SDA allowing a person to stand his or her ground in self-defense and not retreat, even outside a homestead, but only if the "individual . . . has not or is not engaged in the commission of a crime at the time he or she uses deadly force[.]" MCL 780.972(1). The Legislature plainly intended to give Michiganders the right to stand their ground, limited, however, to law-abiding citizens; any involvement in criminal activity negates the right. In the instant case, defendant shot the alleged assailant inside defendant's home. Therefore, there was no duty to retreat under the common law, nor would there have been a duty to retreat under the SDA; however, the SDA would have demanded evidence that defendant was not engaged in the commission of a crime when he shot and killed the purported assailant. Thus, because the duty to retreat was not in dispute, the proper tactical approach here from defense counsel's perspective would have been to seek jury instructions that did not require the jury to entertain the question whether defendant was engaged in the commission of a crime at the time of the shooting, as the law would support entirely the omission of such instructional language under a common-law view.[4] Instead, defense counsel agreed to instructions that raised that precise issue for the jury's contemplation and resolution in three instructions, which was of no benefit whatsoever to defendant and only to his detriment, considering the likely confusion generated by the instructions as argued by defendant and

---

[4] I cannot emphasize enough that the SDA generally preserved self-defense under the common law; therefore, the Supreme Court's common-law-based opinion in *DuPree* remains relevant, and *DuPree* did not indicate or suggest that the defendant, who claimed self-defense in regard to the crime of felon-in-possession, had any obligation to show that he was not engaged in the commission of a crime at the time he employed deadly force.

recognized by the majority.[5]  This constituted deficient performance, as counsel's representation fell below an objective standard of reasonableness.  *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001); *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).  Finally, I agree with the majority's analysis and conclusion that the instructional error was prejudicial.[6]

I respectfully concur.

/s/ William B. Murphy

---

[5] I recommend that the Committee on Model Criminal Jury Instructions work to formulate and draft an instruction that is neatly tailored for self-defense when a defendant is charged with the crime of felon-in-possession.

[6] I note that my discussion of the statutory right to stand one's ground under the SDA, MCL 780.972(1), is to show that it is necessarily connected to the very language at issue in this case regarding whether defendant was engaged in the commission of a crime at the time he used deadly force, which is part of the statutory language, not the common law.  And because defendant was in his home when the shooting occurred, he did not have to resort to the statutory stand-your-ground provision; therefore, there was no basis in law to instruct the jury of the need to show that defendant was not engaged in the commission of a crime when he shot the assailant.  The whole purpose of my concurrence is to demonstrate that the challenged instructions were improper under the law of self-defense, as framed by the common law and the SDA, in the context of this case, and not because a "Catch-22" was created, although that concern certainly supports the determination that the error was prejudicial.